### In re Robert Woodson JORDAN, Debtor.

### Bankruptcy No. 1-80-00385.

United States Bankruptcy Court,
W. D. Kentucky.

Oct. 15, 1981.

Henry H. Dickinson, Glasgow, Ky., trustee.

John D. Minton, Jr., Bowling Green, Ky., for debtor.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on objection of the trustee wherein the trustee contends that the debtor is not entitled to claim a homestead exemption in a house and lot listed and described in Schedule B–1 and claimed exempt pursuant to KRS 427.060.

The facts are not controverted and can be briefly recited. The debtor has claimed an exemption in a house and lot located at Route #2, Bowling Green, Kentucky, and valued by the debtor to be worth Sixty-Five Thousand Dollars ($65,000.00). The property served as the marital residence of the debtor and his spouse until their separation and the filing of a petition for dissolution of marriage in Warren Circuit Court on July 10, 1979. On July 17, 1979, the Circuit Court ordered the debtor to vacate the marital residence and to remit the monthly mortgage payments in the amount of Three Hundred Seventy-Three Dollars ($373.00) during the pendency of the divorce action. Thereafter, the debtor, in violation of the restraining order, attempted to occupy the premises. As a result, the Warren Circuit Court prohibited the debtor, by order entered on November 2, 1979, from attempting to go on the property in controversy. A final decree of dissolution of marriage was entered on April 30, 1980. The property settlement agreement provided for the sale of the marital residence and for the division of the proceeds. There were no children born during the marriage.

By petition filed on March 24, 1981, the trustee proposed to sell the debtor's one-half (½) interest in the marital home to the co-owner, Brenda Jordan, for Ten Thousand Three Hundred Sixty-Four and 15/100 Dollars ($10,364.15). After notice to all creditors, the trustee's petition to sell the property was approved by order of this Court on April 10, 1981. The proceeds resulting from disposition of the debtor's interest are being held by the trustee subject to resolution of the issue now before the Court. The debtor has not physically occupied the premises

since July 17, 1979. Prior to and at the time of the filing of his voluntary petition on November 12, 1980, the debtor resided in Madisonville, Kentucky. The resolution of the allowability of the debtor's claimed exemption in the marital home dictates a determination of his status as a "permanent resident" or whether there is in permanent residence a "dependent" of the debtor.

Initially it must be decided whether the debtor can be classified as a "permanent resident" of the marital home under the facts presented and within the meaning of the applicable statute. A definition of what constitutes a "permanent residence" is neither found in the statute nor has this Court found any decisional law interpreting these words as applied to this statute. Therefore, the Court must resort to an analysis of this term as it exists both in common usage, and as the words have been utilized in other statutory enactments.

In reaching a decision the Court is guided by the conclusion, absent clear legislative intent, that each case must be determined within the particular language of the statute and the circumstances giving rise to the question. Consequently, it seems reasonable to conclude the words "permanent residence" may have a variety of meanings depending upon the context in which the term is used. Mere occupancy might be all the law requires in order to meet the intention of one statute, while to gratify the objective of another statute it may be necessary to find residence to be more than a place of sojourn, and to be all that the word "domicile" means in its strictest and most technical application.

For example, in *Carpenter v. Commonwealth*, 256 S.W.2d 509 (Ky.1953), the Kentucky Court of Appeals, in interpreting the residency requirements of Kentucky domestic relations statutes, found that:

The two terms (domicil and residence) are not synonymous. Although used interchangeably, they have a separate and distinct meaning. "Domicil" has a broader meaning than 'residence'. It includes residence but actual residence is not essential to retain domicil after it is once acquired. Residence is preserved by act; domicil by an act coupled with intent. While one may have only a single domicil, he may have several residences. At 510.

A federal judge, in determining the residency requirements for students who sought to vote in Kentucky elections defined the term "residence" to imply a mere physical presence which may or may not be transient in character, and further reasoned that "domicil" was a ". . . place where a person intends to reside permanently." The Court concluded that, "In Kentucky, residency for the purpose of voter registration, is synonymous with the legal concept of domicil." *Bright v. Baesler*, 336 F.Supp. 527, 529 (E.D.Ky.1971), citing *Coleman v. Coleman*, 243 Ky. 279, 47 S.W.2d 1034 (1932).[1]

Expressed differently, residence was defined by the Florida Appellate Court, in *Engel v. Engel*, 97 So.2d 140 (Fla.App.1957). There the Court stated that, "Whether speaking of domicile or residence and whether treating them as synonymous or not, the basic thought is that a man's home is where he makes it and that he intends to make it where in fact he does." The Court went on to state that "[t]he concept of 'permanency' when used in this sense means the presence of the intention to reside at that particular place for an indefinite period of time." At 142. See also *Southeastern Greyhound Lines v. Conklin*, 303 Ky. 87, 196 S.W.2d 961 (Ky.1946).

As previously stated, one of two elements must be present to establish a homestead exemption in Kentucky—the claimant must "permanently reside" at the particular location or a dependent of the claimant must make it his permanent residence. It is evident that the legislative drafters amending the statute, by deleting the term "head of

---

1. See *Everman v. Thomas*, 303 Ky. 156, 197 S.W.2d 58 (Ky.1946). The Kentucky Court of Appeals, in interpreting residency for purposes of voting, applied the same reasoning as followed in *Bright* by defining the word "reside" as used in Section 145 of the Constitution, and "residence" as used in KRS 117.020 to be the equivalent to "legal domicile" as distinguished from a place of actual abode.

household" and substituting it with the requirement that the claiming debtor permanently reside at the property being asserted exempt, intended that the occupancy be more than a mere sojourn. It is doubtful that the writers of the statute would have ignored Kentucky decisional law; and in fact, it appears that the legislature chose the words to achieve a clear congressional objective. Therefore, to satisfy the intention and requirements of KRS 427.060, it is the conclusion here that "permanent residence" means "domicile", and the debtor-claimant has thus failed to establish that he is entitled to the benefits of the exemption provided.

Having reached this result, it is now necessary to determine whether the debtor can prevail under the dependency alternative pursuant to KRS 427.060, which provides the allowance of the exemption if occupancy is by a dependent of the debtor. A definition of the term "dependent" is not found in the statute, thus we must again rely on other judicial interpretations of the word and on federal law. Although the Commonwealth, in the exercise of its authority granted in 11 U.S.C. § 522(b)(1), did enact legislation on April 9, 1980, denying to its citizens the benefits delineated in subsection (d) of 11 U.S.C. § 522, nevertheless, all other provisions contained therein continue to be applicable. Specifically, § 522(a) defines "dependent" to include "the debtor's spouse, whether or not actually dependent." Since the final decree of divorce was entered over six months prior to the debtor's voluntary petition in bankruptcy, it is obvious that he does not qualify under 11 U.S.C. § 522(a). As the word "include" is not limiting, 11 U.S.C. § 102(3), and in furtherance of the legislative intent of providing a fresh start, we must delve further into other possible applications.

Additional meaning can be found in the Uniform Exemptions Act which defines "dependent" to be ". . . an individual who derives support primarily from another individual." Section 1(2). The debtor fails to qualify on the date the order for relief was entered since the debtor was not providing support or maintenance to his former wife. Although he was ordered by the Circuit

Court to remit the monthly mortgage installments, such payments were not in lieu of alimony but an apparent attempt by the state court to preserve a marital asset. Since the former spouse is not within the accepted meaning of the term "dependent", then the provisions of 11 U.S.C. § 522(a)(1) are also inapplicable.

The Court agrees with debtor's counsel that the statutory provisions for homestead exemptions satisfy a proper legislative objective by providing the debtor and the debtor's dependents with an opportunity for a new financial start, and it is encumbent upon the courts to liberally interpret and construe them so that the end sought to be accomplished may not be defeated. However, a statute may not receive such broad and liberal interpretation and construction as to place its meaning beyond the scope of the apparent legislative purpose.

For the foregoing reasons, IT IS ORDERED AND ADJUDGED that the trustee's objection be and is sustained, and debtor's claimed exemption be and is denied. 11 U.S.C. § 522(a)(1) and Rule 403, R.B.P.